Pending the wife's contested suit for separate maintenance and immediately prior to the day fixed for the final hearing of the cause a reconciliation was effected, partly through the efforts of the wife's solicitor. He now applies for the allowance of costs and counsel fee against the defendant husband and (incidentally) for an order dismissing the bill.
The motion to dismiss is not opposed, and will be granted. The cause of action having ceased to exist because of the reconciliation, the suit has been terminated. Byrne v. Byrne,93 N.J. Eq. 5; Wilson v. Wilson, 14 N.J. Mis. R. 33, 47.
The services which have been rendered by the wife's solicitor entitle him, in my judgment, to a counsel fee of $100 besides costs, in addition to the pendente lite allowance heretofore paid. The circumstances warrant the imposition of these amounts as a charge upon the husband. The application is timely. SeeLief v. Lief, 14 N.J. Mis. R. 27, 29.
The defendant resists the application on the ground that *Page 234 
the court is without authority to grant it because of the termination of the suit by reconciliation, and because it would be against public policy as tending to disrupt the reconciliation, citing Kuntz v. Kuntz, 80 N.J. Eq. 429. In that case the court denied a similar application, holding that such a charge could not be considered to be in the category of "necessaries" for which the husband could be held liable at common law, and that while the motion was made by counsel it was necessarily made in the wife's behalf, "because all proceedings of this nature must be in favor of the wife and all costs and counsel fees which are awarded in the suit must be awarded to her, and only she can proceed in her own name for costs and counsel fees or prosecute the husband for disobedience of an order in relation to the same. To permit a motion of this sort to be prosecuted on behalf of the wife against her husband after they have been reconciled to each other and have resumed cohabitation and are living together in a state of amity would be an anomaly. It would be continuing the litigation after the parties had put an end to it, and would have a tendency to break up the reconciliation and cause a resumption of the litigation."
The authorities cited by the learned vice-chancellor in support of the portion of his opinion above quoted go to the extent only of holding that reconciliation puts an end to the litigation so far as the rights and interests of the parties are concerned. None of them involved the application of the wife's solicitor for payment for his services, and I know of no precedent, other than the Kuntz Case itself, which holds that the reconciliation of the parties can defeat her solicitor's claim for compensation. Evidently, the attention of the court in the Kuntz Case was not directed to two earlier decisions in this court bearing upon the solicitor's right to payment as distinguished from the rights of the parties toward each other. One of these cases is reported (without naming the parties) in 9 N.J.L.J. 274 (July 12th 1886). There the wife filed a bill for separate maintenance, charging that she had been driven from the matrimonial home by her husband. He filed a verified answer alleging that he was ready to take his wife *Page 235 
back, and she returned to him under the court's direction. In granting a counsel fee to her solicitor after the parties had resumed cohabitation, Vice-Chancellor Van Fleet observed: "To deny the complainant counsel fees would be to say that a lawyer who in good faith brings a suit for divorce after a full and careful examination of the facts, should have to do his work for nothing, and pay costs out of his own pocket in case the defendant should give pledges to do his duty and the court should order the plaintiff to return to him."
The other case, not cited in the Kuntz decision is Conlin
v. Conlin (1888), 11 N.J.L.J. 174. There the chancellor in a separate maintenance suit awarded maintenance to the wife by final decree, including costs and counsel fee as against the defendant. After entry of decree reconciliation was effected. The wife agreed with her husband to abandon her claim for alimony and verbally released him from payment of costs and counsel fee. Thereafter he again abandoned his wife, whereupon application was made to adjudge him in contempt for failure to pay the maintenance allowance, costs and counsel fee as adjudged in the decree. The court held that by the reconciliation the wife relinquished her right to maintenance installments under the decree and therefore must commence a new suit for that purpose, but that the provision for payment of counsel fee was for the benefit of the solicitor and could not be discharged by any agreement which the wife might make with her husband.
Very recently in this court Advisory Master Grosman pointed out that costs and counsel fees, while allowed in right of the litigant, are payable to the solicitor, and that an unpaid solicitor is a proper party in his own right to an action in this court entitling him to petition the chancellor for relief in respect to compensation. Flavell v. Flavell,15 N.J. Mis. R. 167.
Any fear that the allowance of costs and counsel fee might tend to disrupt the reconciliation is not, in my judgment, well founded in fact. If the reconciliation be so insincere and impermanent as to be jeopardized by so trivial a cause it is at best unworthy of consideration, and it may well be a *Page 236 
mere pretense on the husband's part adopted as a means of evading his just obligation. If such apprehension were justified it would oblige the court to deny costs and counsel fees in almost every matrimonial case resulting in dismissal, on the theory that it might tend to discourage the parties from seeking reconciliation as their duty requires. Since the decision in the Kuntz Case
this court and the court of errors and appeals have repudiated the suggestion that any such consideration should influence the court. Fike v. Fike, 3 N.J. Mis. R. 485, 488; affirmed,99 N.J. Eq. 424.
In the case at bar the wife's solicitor in good faith instituted and pressed the suit in her behalf. She has not, and never has had, the means to compensate him. He has acted from the first upon the knowledge that his compensation must come from the husband. As solicitor for the wife he has done his work well. He has gone further and has aided in bringing about a reconciliation. In this respect he has acted in the interest of society and the public policy. Is he to be penalized for doing so, by being denied a fee honestly earned? In matrimonial cases we regard the wife as the favored suitor, and call upon the husband to pay her suit moneys; otherwise in many cases the wife would be powerless to assert her legal rights against him. We encourage reputable counsel to represent wives in meritorious cases, upon the implied assurance that they will be compensated for the reasonable value of their services through orders against the husbands. We also applaud and encourage their efforts, as officers of the court, to effect reconciliations where possible. Unless all this is mere platitude, how can we penalize them for doing what we preach to them is their duty? If we do so, how can we expect counsel to be willing to undertake a destitute wife's case against her husband, no matter how meritorious? Public policy requires that lack of means shall not deprive the wife of the services of a competent solicitor, and it follows that it is contrary to public policy to deny reasonable compensation to such solicitor in proper cases to be paid by the husband; afortiori, where the suit has abated by reconciliation due to efforts of the wife's solicitor. It is true that the cause of action no *Page 237 
longer exists and that as between the parties the only order which can properly be entered is an order dismissing the suit, but the wife's solicitor has acquired a separate interest of his own, which cannot be divested by act of the parties without his consent, and which it is the duty of this court to protect.
The order of dismissal will provide for the payment by the defendant to the wife's solicitor of a counsel fee of $100, and costs to be taxed.
(NOTE — The chancellor has authorized me to state that he approves and concurs in this opinion.) *Page 238